UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SARAH VAZQUEZ,<br><br>                  Plaintiff,<br>v.<br><br>KARCHER NORTH AMERICA, INC.<br>and DANIEL ORTIZ,<br><br>                  Defendants. | Civil Action No. 13-3817 (WJM)<br><br><br>**REPORT & RECOMMENDATION** |

**FALK, U.S.M.J.**

      Before the Court is Plaintiff's motion to remand this case to state court. [CM/ECF No. 4.] The motion is opposed. No argument was heard. Fed. R. Civ. P. 78(b). Based upon the following, it is respectfully recommended that the motion be **GRANTED**.

**BACKGROUND**

      This is an employment case. Plaintiff, a New Jersey resident, was formerly employed by Defendant Karcher North America. (Compl., ¶¶ 1-2.) Defendant Ortiz was her supervisor. (Compl., ¶ 4.) Karcher is a Delaware corporation with its principal place of business in Colorado. (Notice of Removal ¶ 8(a).) Ortiz is a New Jersey resident. (Compl., ¶ 4.) Plaintiff contends that she was sexually harassed and retaliated against by Karcher, culminating in her unlawful firing. She also claims that Ortiz aided and abetted the harassment and retaliation by, *inter alia*, propositioning her for sex; sticking his hand down her blouse and lifting up her skirt; touching her legs; and showing her pornographic images on his phone. (Compl., ¶ 9.)

      Plaintiff filed her Complaint in New Jersey Superior Court on February 8, 2013,

asserting claims under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq*. ("NJLAD") for hostile work environment (against Karcher); retaliation (against Karcher), and aiding and abetting harassment and retaliation (against Ortiz). At the time, the parties were not completely diverse—Plaintiff and Ortiz are both citizens of New Jersey.

On April 19, 2013, Defendants filed a state court motion to dismiss Plaintiff's aiding and abetting claim against Ortiz. Defendants' argument was that the Complaint alleges that Ortiz was the "principal wrongdoer" and that, under the relevant law, he could not be liable under the NJLAD for aiding and abetting his own conduct. The motion was opposed.

On May 24, 2013, the Superior Court granted Defendants' motion, ruling, in a hand written notation on an Order, that Ortiz "acted alone," and therefore, could not be liable under the NJLAD. (Notice of Removal, Ex.B.)

Following Ortiz's dismissal, on June 20, 2013, Defendant removed the remainder of the case against Karcher to this Court. Four days later, on June 24, 2013, Plaintiff moved to remand. She contends that federal diversity jurisdiction requires the presence of diverse citizenship both at the time the case was filed and when it was removed, and that only exception to this requirement is when a plaintiff voluntarily dismisses a non-diverse party in state court (the "voluntarily-involuntary rule"), which did not occur here. Karcher has opposed remand, urging this Court disregard the voluntary-involuntary rule and/or conclude that Ortiz was fraudulently joined to defeat diversity.

The motion to remand is fully briefed. For the reasons set forth below, the voluntarily-involuntary rule applies and removal was inappropriate. Moreover, Defendant's fraudulent joinder argument lacks merit. Remand is appropriate.

## **LEGAL STANDARD**

The federal removal statute provides that "[e]xcept as otherwise provided by Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007). Removal is strictly construed and all doubts are resolved in favor of remand. See Samuel-Bassett v. Kia Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004).

2

To remove a case based on diversity, diversity of citizenship between the parties must exist at the time the claim was filed and when removal is sought. Am. Dredging Co. v. Atl. Sea Con. Ltd., 637 F. Supp. 179, 181 (D.N.J. 1986). If diversity did not exist at the time the claim was filed, a claim can only later be removed based on diversity if the plaintiff voluntarily creates it. See Hoffman v. Met. Life Ins. & Annuity, 2012 WL 3185953, at *3 (D.N.J. Aug. 2, 2012) (citing Powers v. Chesapeake & Ohio Ry. Co., 169 U.S. 92, 98 (1898)). In other words, if diversity is created by the plaintiff's voluntary act, the case is removable. See id. This is referred to as the "voluntary-involuntary rule."

Under the voluntary-involuntary rule, a case is removable when the plaintiff voluntarily dismisses the claim against a non-diverse party. See Hoffman, 2012 WL 3185953, at *3 (citing Whitcomb v. Smithson, 175 U.S. 635, 636 (1900)); see also Rubino v. Genuardi's Inc., 2011 WL 344081, at *5 (E.D. Pa. Jan. 31, 2011) ("Under the voluntary-involuntary rule, a case that is not initially removable cannot become removable except by a voluntary act of the plaintiff, such as an amendment of the pleadings or a voluntary dismissal of the non-diverse defendant."). A voluntary act constitutes a plaintiff's desire not to pursue the case against a non-diverse party, demonstrated by voluntarily amending the pleadings. Hoffman, 2012 WL 3185953, at *3 (citing Higgins v. E.I. Dupont de Nemours & Co., 863 F.2d 1162, 1166 (4th Cir. 1998)). Conversely, when a non-diverse defendant is dismissed against the plaintiff's will, due to an interlocutory order from a judge, removal is inappropriate. See id.; Higgins, 863 F.2d at 1166; Quinn v. Aetna Life Ins. & Cas. Co., 616 F.2d 38, 41 (2d Cir. 1980); LGP Gem. Ltd. V. Cohen, 636 F. Supp. 881, 882-83 (S.D.N.Y. 1986); Am. Dreding Co., 637 F. Supp. at 182.

**Decision**

Application of the voluntary-involuntary rule to this case compels remand. There is no dispute that diversity of citizenship was lacking at the time the case was filed. Diversity was only created when Ortiz was dismissed from the case by order of a state court judge. Ortiz was not voluntarily dismissed and Plaintiff did not amend her pleadings and drop Ortiz from the case. Rather than a voluntarily act, Ortiz was dismissed—and diversity created for the first time—only following briefing on a heavily contested motion. Plaintiff has stated clearly that she intends to appeal that ruling at the appropriate time. (Pl.'s Reply Br. 1, 7.) In sum, diversity did not exist when the case was filed; diversity was created for the first time by an interlocutory ruling of a judge on a contested motion; and Plaintiff intends to appeal that ruling. The voluntary-involuntary rule applies, and Karcher's removal of the case violates that rule.[1]

---

[1] Karcher suggests that amendments to 28 U.S.C. § 1446 eliminated the voluntary-involuntary rule. The argument is not persuasive. The amendment only altered the timetable for removal, which has been acknowledged by every Court of Appeals to

3

Karcher attempts to skirt application of the voluntary-involuntary rule and avoid remand by arguing that Ortiz was fraudulently joined. The argument is meritless.

Fraudulent joinder is meant to address frivolous claims. See In re Briscoe, 338 F.3d at 223, 224 (3d Cir. 2006) (fraudulent joinder applies, e.g., to claims barred by statute of limitations). Joinder is only fraudulent when "there is no reasonable basis in fact or colorable ground supporting the claim"; in other words, when the claim is "wholly insubstantial and frivolous." Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992). Fraudulent joinder is not a merits analysis, In re Briscoe, 448 F.3d at 219 ("courts must be careful not step from the threshold jurisdictional issue into a decision on the merits"), and "the inquiry into the validity of the complaint triggered by a motion to dismiss . . . is more searching than that permissible when a party makes a claim of fraudulent joinder." Batoff, 977 F.2d at 852 (emphasis added). The burden of establishing fraudulent joinder is heavy. See id.

It is Karcher's position that Ortiz is the alleged "principal wrongdoer" and that a principal wrongdoer cannot be liable for aiding and abetting his own conduct under the NJLAD. (See Def.'s Br. 14; citing cases). Karcher claims that Plaintiff should have voluntarily dismissed Ortiz and that he was fraudulently joined to defeat federal diversity jurisdiction.

Karcher doesn't come close to establishing that Ortiz was fraudulently joined. At the time Ortiz was dismissed, the existing authority was, at best, in conflict, and some courts were of the view that Hurley v. Atl. City Police Dep't, 174 F.3d 95 (3d Cir. 1999), did support claims against supervisors for aiding and abetting their own conduct. See Ivan v. Cnty. of Middlesex, 612 F. Supp. 2d 546, 552 & n.1 (D.N.J. 2009). The state court judge apparently concluded differently in this case. However, the split in authority alone precludes a finding that Plaintiff fraudulently joined Ortiz, regardless of his dismissal in state court. The state court judge's determination was made after

---

address the issue. See, e.g., Poulos v. Naas Foods, Inc., 959 F.2d 69, 72 (7th Cir. 1992); Insinga v. LaBella, 845 F.2d 249, 252 (11th Cir. 1988) ("[S]ection 1446(b), as amended in 1949, has been widely interpreted as preserving the voluntary-involuntary rule."); Self v. Gen. Motor Corp., 588 F.2d 655, 658 & n.4 (9th Cir. 1978) ("[Section 1446] was amended to substantially its present form in 1949. The voluntary-involuntary rule was not altered by the amendment" (cites omitted)); Weems v. Louis Dreyfus Corp., 380 F.2d 545, 548-49 (5th Cir. 1967). The rule also continues to be routinely recognized and applied by district courts in this Circuit. See, e.g., Hoffman, 2012 WL 3185953, at *3; In re Asbestos Prod. Liability Litig., 801 F. Supp. 2d 337, 339 (E.D. Pa. 2011) ("[A]ll district courts in the Third Circuit to consider the issue have upheld the voluntary rule."); Rubino v. Genuardi's Inc., 2011 WL 344081, at *5 (E.D. Pa. Jan. 31, 2011); Lee v. Carter-Reed, 2006 WL 3511160, at *2 (D.N.J. Dec. 5, 20006).

consideration of a heavily contested dispositive motion on a subtle issue of law that calls for a much more searching analysis than the fraudulent joinder inquiry permits.

The joinder of Ortiz was in no way patently frivolous. Ortiz was not some disinterested or uninvolved party that was randomly joined to defeat federal diversity jurisdiction; the claims against him are graphic and numerous. What happened was that the state court sided with a line of authority finding the claim against Ortiz failed, and Plaintiff lost. That does not mean that Plaintiff fraudulently joined a party to defeat federal jurisdiction. Losing a motion to dismiss in state court does not automatically equate to fraudulent joinder. Thus, on this ground alone the Court would reject Karcher's fraudulent joinder argument.

But there is more. In April 2013, the New Jersey Appellate Division issued a decision, after the state court judge's ruling dismissing Ortiz from the case, holding the opposite of that decision—that is, a principal wrongdoer *can* be held liable for aiding an abetting his own conduct under the NJLAD:

> This aiding and abetting analysis can lead to a 'somewhat awkward theory of liability," because it appears to permit a supervisor to be held liable for 'aiding and abetting' another individual, while letting a supervisor escape liability when the supervisor is the sole harasser. Hurley [v. Atl. City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999)]. In Hurley, the Third Circuit acknowledged that 'we have not fully elucidated the principles that might allow a harassing supervisor to be individually liable for aiding and abetting . . . when the challenged conduct is failing to stop the supervisor's own harassment. See id.
> The Third Circuit, therefore, found that a 'supervisor, under New Jersey law, has a duty to act against harassment. This duty can be violated by deliberate indifference or affirmatively harassing acts. When a supervisor flouts this duty, he subjects himself and his employer to liability. Id. Therefore, under Hurley and Cicchetti, a supervisor can be individually liable for his or her own affirmative LAD violations. Ivan v. Cnty. of Middlesex, 612 F. Supp. 2d 546, 552 (D.N.J. 2009).
> . . .
> Based on the 'broad and pervasive' reach of the LAD, and the requirement that it be liberally construed to effectuate its purpose, any suggestion that N.J.S.A. 10:5-12(e) permits individual liability for a supervisor who encourages or facilitates another employee's harassing conduct, while

5

precluding individual liability for the supervisor based on his
or her own discriminatory or harassing conduct, appears to us
to be untenable.

Rowan v. Hartford Plaza Ltd., 2013 WL 1350095, at *7-9 (App. Div. Apr. 13, 2013).

Rowan has already been followed in this District in rejecting the same arguments and cases relied on by Karcher here. See Brown-Marshall v. Roche Diagnostics, 2013 WL 3793622, at *7 (D.N.J. July 19, 2013). Rowan eviscerates what remains of Karcher's fraudulent joinder argument.[2]

## CONCLUSION

This case belongs in state court. Defendant's removal violates the voluntarily-involuntary rule and its fraudulent joinder argument lacks merit. For the reasons stated above, it is respectfully recommended that Plaintiff's motion be **GRANTED**.[3]

s/Mark Falk
**MARK FALK**
**United States Magistrate Judge**

**DATED: September 23, 2013**

---

[2] Karcher refers to a decision from this district, Berckman v. UPS, 2007 WL 4080372, at *3 (D.N.J. Nov. 14, 2007), as standing for the proposition that, if an aiding and abetting claim against a non-diverse supervisor is dismissed in state court, the case then can be removed. The Court disagrees. The case does not discuss the voluntary-involuntary rule, and does not state that an involuntarily dismissal of a non-diverse party would create a right of removal. Defendant's argument is essentially that Berckman either rejects the voluntary-involuntary rule (without the case actually even mentioning the rule at all and contrary to extensive authority holding otherwise) or creates some type of exception to it in aiding and abetting NJLAD cases. Berckman does no such thing. The dicta Defendant relies on does not support its position.

[3] Plaintiff requests an award of fees for improvident removal. Although remand is appropriate, the Court is unable to conclude that the removing party lacked an objectively reasonable basis seeking removal. See Martin v. Franklin Capital Corp., 536 U.S. 132, 141 (2005) (fees only appropriate when removal was frivolous and lacked an "objectively reasonable basis"). While the Undersigned views the issue as clear, at the time of removal there were cases deciding the aiding and abetting issue both ways. Therefore, the Court declines to recommend an award of costs and fees.

6